**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION - CINCINNATI**

| | | |
|---|---|---|
| JOHN WILLIAM LONG, | : | Case No. 1:23-cv-714 |
| | : | |
| Petitioner, | : | Judge Matthew W. McFarland |
| | : | |
| v. | : | |
| | : | |
| WARDEN, PICKAWAY CORRECTIONAL INSTITUTION, | : | |
| | : | |
| Respondent. | : | |

## ORDER AND OPINION

This matter is before the Court on the Magistrate Judge's Report and Recommendation (Doc. 43) and Supplemental Report and Recommendation (Doc. 54). Petitioner filed Objections (Doc. 45) concerning the Report and Recommendation, to which Respondent filed a Response (Doc. 46). Neither party filed any objections to the Supplemental Report and Recommendation (Doc. 54), and the time to do so has passed. For the following reasons, the Court **ADOPTS** the Magistrate Judge's Reports and Recommendations (Docs. 43, 54) and **DISMISSES** this case.

## BACKGROUND

Petitioner John William Long was convicted of murder more than two decades ago in 2004. (Judgment, Doc. 20, Pg. ID 216.) The subsequent procedural history has been extensive. For present purposes, however, the Court recounts the following relevant timeline.

Years after Petitioner's conviction, the Hamilton County Court of Common Pleas denied Petitioner's motion for a new trial based on newly discovered evidence on March 23, 2022. (Denial of Motion for New Trial, Doc. 20-1, Pg. ID 1676.) Petitioner appealed. (Notice of Appeal, Doc. 20-1, Pg. ID 1677.) The Court of Appeals of Ohio for the First District affirmed the denial of a new trial in *State v. Long*, 2023-Ohio-132, 2023 WL 222824 (Ohio Ct. App. Jan. 18, 2023). (Appellate Court Opinion, Doc. 20-1, Pg. ID 1727-44.) Petitioner then sought review from the Supreme Court of Ohio, which declined to accept jurisdiction. (Notice of Appeal, Doc. 20-1, Pg. ID 1772-73; Order, Doc. 20-1, Pg. ID 1812.)

On November 1, 2023, Petitioner's initial Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 was placed on the docket. (*See* Petition, Doc. 3.) Following the Sixth Circuit's ruling that this Petition does not constitute a second or successive petition (*see* Order and Judgment, Doc. 8), the current proceedings continued. Petitioner subsequently filed an Amended Petition that was docketed on September 5, 2024. (*See* Am. Petition, Doc. 15.) Specifically, Petitioner alleges violations of the Fourteenth Amendment in light of *Brady v. Maryland*, 373 U.S. 83 (1963), and *Napue v. Illinois*, 360 U.S. 264 (1959), as well as violations of the Sixth and Fourteenth Amendments due to the ineffective assistance of counsel. (*See id.*)

Respondent filed an Amended Return of Writ and claimed that the Amended Petition is untimely. (Am. Return of Writ, Doc. 28, Pg. ID 3025-33.) Petitioner responded that his Amended Petition is timely because he diligently pursued his claims. (Reply, Doc. 25, Pg. ID 2914-16.) The Magistrate Judge initially recommended that the Court dismiss the Amended Petition as untimely or—in the alternative—dismiss the Amended Petition

on the merits. (Report, Doc. 43, Pg. ID 3233.) Petitioner filed Objections as to both recommendations. (Objections, Doc. 45.) Respondent opposed these Objections. (Response, Doc. 46.) Upon consideration, the undersigned recommitted the matter to the Magistrate Judge for a Supplemental Report and Recommendation. (*See* Recommittal Order, Doc. 53.) The Magistrate Judge reaffirmed his recommendation of dismissal due to untimeliness and withdrew his alternative recommendation concerning the merits. (Supp. Report, Doc. 54, Pg. ID 3305.) Neither party has objected to the Supplemental Report and Recommendation. Accordingly, this matter is now ripe for review.

**LAW AND ANALYSIS**

As an initial matter, Petitioner has not filed any objections to the Magistrate Judge's Supplemental Report and Recommendation (Doc. 54). Accordingly, Petitioner has waived further review in that regard. *See Song v. Fitz*, 800 F. Supp. 3d 852, 865 (M.D. Tenn. 2025); *Veltkamp v. Comm'r of Soc. Sec.*, 528 F. Supp. 2d 716, 718 (W.D. Mich. 2007). Regardless, even if the Court were to construe Petitioner's prior objections to the Report and Recommendation as fully preserving the issues, they do not warrant relief for the following reasons.

The Court conducts de novo review of any portions of the Report and Recommendation properly objected to by a party. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). "The filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object." *Cole v. Yukins*, 7 F. App'x 354, 356 (6th Cir. 2001). Accordingly, "a party must identify each issue in the [Report and Recommendation] to which they object with sufficient clarity, or

else that issue is forfeited." *Price v. Ohio Dep't of Rehab. & Corr.*, 649 F. Supp. 3d 598, 604 (S.D. Ohio 2023) (citing *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995)).

To the extent that Petitioner "requests that his Reply to the Respondent's Answer (Doc. 25), in its totality, be considered as a central basis of [his] Objections," this invitation amounts to an improper general objection. (Objections, Doc. 45, Pg. ID 3254.) As courts within the Sixth Circuit have frequently recognized, "Objections that are merely recitations of the identical arguments that were before the magistrate judge do not constitute specific written objections to the proposed findings and recommendations, and [courts are] therefore not obligated to address such objections." *Monk v. United States*, No. 3:12-CR-120, 2020 WL 3604994, at *9 (W.D. Ky. July 2, 2020) (cleaned up); *see also VanDiver v. Martin*, 304 F. Supp. 2d 934, 937 (E.D. Mich. 2004) (explaining that "simply summariz[ing] what has been presented before[] is not an 'objection' as that term is used in this context"); *United States v. Davis*, 421 F. Supp. 3d 433, 440 (E.D. Ky. 2019), *aff'd*, No. 20-5835, 2021 WL 5782360 (6th Cir. Dec. 7, 2021) (similar).

Centering upon what Petitioner labels as his first "specific" objection, the Court now considers Petitioner's disagreement with the Magistrate Judge's conclusion that his Amended Petition is time barred. (Objections, Doc. 45, Pg. ID 3255-56.) The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides four possible dates that trigger the one-year statute of limitations for a petitioner seeking habeas relief from a state conviction. *See* 28 U.S.C. § 2244(d)(1). Relevant here, Petitioner stakes his timeliness argument on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." *Id.* at § 2244(d)(1)(D);

(Objections, Doc. 45, Pg. ID 3255-56.) Petitioner contends that "the statute of limitations clock started on May 14, 2019, the date that he obtained the intentionally suppressed evidence that was used to establish his *Brady* claim." (*Id.* at Pg. ID 3256.) Respondent, in turn, argues that Petitioner was aware — or at the very least should have been made aware through diligence — of the underlying factual predicates for the present claims well before May 2019. (Am. Return of Writ, Doc. 28, Pg. ID 3025-33; Response to Objections, Doc. 46, Pg. ID 3270-72.)

The applicability of § 2244(d)(1)(D) is determined on a claim-by-claim basis. *See Ege v. Yukins*, 485 F.3d 364, 373-74 (6th Cir. 2007); *Magee v. Braman*, No. 2:23-CV-12406, 2025 WL 698698, at *4 (E.D. Mich. Mar. 4, 2025). Rather than delineating the potential timeliness of each separate claim, Petitioner appears to singularly assert that his "claims are based on the suppression of evidence in violation of *Brady*." (Objections, Doc. 45, Pg. ID 3256.) Specifically, Petitioner objects that "the statute of limitations clock started on May 14, 2019, the date that he obtained the intentionally suppressed evidence that was used to establish his *Brady* claim." (*Id.*) Beyond arguing that his claims "cannot be raised until the suppressed evidence is relinquished by . . . the State," Petitioner does not offer any specific objections as to the statute-of-limitations question. (*Id.*)

Courts generally ask three questions when making a § 2244(d)(1)(D) determination: (1) what is the factual predicate of the petitioner's claim; (2) could the petitioner have discovered the factual predicate of his claim through due diligence; and (3) did the petitioner file his petition within one year of discovering the factual predicate? *Ayers v. Ohio Dep't of Rehab. & Corr.*, 113 F.4th 665, 670 (6th Cir. 2024). Beyond Petitioner's

general assertion concerning the timeliness of his claims, Petitioner's Objections (Doc. 45) do not explicitly touch upon these inquiries.

When the undersigned recommitted this matter to the Magistrate Judge for further analysis, the Magistrate Judge noted that:

> [Petitioner] does not respond at all to the distinction between discovering evidence and discovering the factual predicate of his claims relied on in the Report or the Report's conclusion that he learned the "factual predicate" of his claims years before he could obtain the new evidence. He offers no authority at all for the proposition that discovery of the needed evidence is the same as discovering the factual predicate.

(Supp. Report, Doc. 54, Pg. ID 3304.) As mentioned, Petitioner filed no objections to the Magistrate Judge's Supplemental Report and Recommendation.

Nevertheless, to ensure a thorough record, the Court now proceeds to address Petitioner's arguments. In bringing his present claims, Petitioner relies upon what he terms to be "newly discovered evidence" that he received in May 2019: a Homicide Unit Narrative Report, a Cincinnati Police Investigative Log, Hamiton County Coroner's Chain of Custody and Case History documents, as well as suppressed statements from Brandy Jones, Steve Wyatt, Shelise Gilmore, and Patrina Crawford. (Am. Petition, Doc. 15, Pg. ID 170-71.) The Amended Petition alleges that this newly discovered evidence supports "the assertion that the assailant was injured during the commission of the offense and left blood at the crime scene." (*Id.* at Pg. ID 170.)

The record evinces that, for years, Petitioner has advanced a theory that the perpetrator cut himself or herself and that the State had failed to disclose evidence and statements. (State Court Record, Doc. 20, Pg. ID 518, 523, 525-29, 595.) Tellingly, back in

2008, Petitioner requested leave to file an amended petition in a previous habeas proceeding to include *Brady* claims. *Long v. Warden*, 1:06-CV-787 (S.D. Ohio Dec. 3, 2008), Motion to Amend, Doc. 22, Pg. ID 661. In support, Petitioner stated the following: "The State of Ohio, and/or it[s] agents (i.e. Cincinnati Police, Hamilton County Prosecutor's Office, agents of the Hamilton County Crime Lab), intentionally withheld exculpatory forensic evidence, and eyewitness testimony that would exonerate Petitioner, and this ultimately resulted in the conviction of [one] who is 'actually innocent' of the crime in which he has been convicted." (*Id.*) Moreover, Petitioner applied for DNA testing in 2018 because there was a "strong probability that the perpetrator . . . cut themself" and that there was a "potential *Brady* violation . . . [i]f blood evidence was discovered at the crime scene with the exculpatory results being withheld from the defense." (DNA Application, Doc. 20, Pg. ID 919.) By a similar token, Petitioner applied for DNA testing in 2012 since "there was [a lot] of evidence submitted to the Crime Lab during the course of the investigation, and not all of that evidence was submitted to the defense." (DNA Application, Doc. 20, Pg. ID 595.)

Accordingly, the Magistrate Judge concluded that, "regardless of when [Petitioner] obtained the [newly discovered] evidence relied on in his new trial motion, [he] knew the factual predicates of his claims long before he obtained his case file in May 2019." (Report, Doc. 43, Pg. ID 3231-32.) Though the term "factual predicate" is not statutorily defined, the Sixth Circuit has explained that "a factual predicate consists only of the vital facts underlying the claim." *Ayers*, 113 F.4th at 670 (quotations omitted). "A fact is 'vital' if it is required for the habeas petition to overcome sua sponte dismissal." *Id.*

The question further revolves around whether the petitioner was "aware of the vital facts for his claim"—not necessarily whether he "understood [their] legal significance." *Smith v. Meko*, 709 F. App'x 341, 344 (6th Cir. 2017). Additionally, "courts in the Sixth Circuit have held that Section 2244(d)(1)(D) does not convey a statutory right to an extended delay while a petitioner gathers every possible scrap of evidence that might support his claim." *Mock v. Bracy*, No. 4:22-CV-937, 2024 WL 2347279, at *12 (N.D. Ohio May 22, 2024) (quotation omitted).

Respondent argues that, although Petitioner's "2019 public records request may have produced additional documents, . . . it did nothing more than supplement [Petitioner's] already existing claim[s]." (Response, Doc. 46, Pg. ID 3272.) In turn, Petitioner contends that these types of claims "cannot be raised until the suppressed evidence is relinquished by the party who suppressed it." (Objections, Doc. 45, Pg. ID 3256.) However, Petitioner does not cite any authority for such a categorical rule. The precedent is more nuanced: "*In some circumstances*, the statute of limitations under § 2255(f)(4) will not begin to run on a *Brady* claim until the suppressed evidence is disclosed by the government." *Jefferson v. United States*, 730 F.3d 537, 547 (6th Cir. 2013) (emphasis added). And, in other circumstances, courts have determined that the factual predicate for a *Brady* claim is the discovery that evidence was in fact withheld—rather than discovery of the specific evidence that was withheld. *See Lopez v. Warden of Tyger River Corr. Inst.*, No. 9:22-CV-250, 2022 WL 18457734, at *10 (D.S.C. Dec. 8, 2022), *report and recommendation adopted*, No. 9:22-CV-250, 2023 WL 387608 (D.S.C. Jan. 25, 2023); *Bracey v. Superintendent Rockview SCI*, 986 F.3d 274, 293 (3d Cir. 2021). Petitioner does not offer

analysis concerning the facts that he knew about prior to May 2019 or why such facts would not have amounted to the factual predicate for the current claims. *See Cruz v. Marshall*, No. 1:13-CV-1097, 2017 WL 4180016, at *4 (M.D.N.C. Sept. 20, 2017) (explaining that the petitioner's "allegations only address when he contends he received hard copies of the file, not when he received the information in the file or may have been on notice of the information in the file"). Without assertions concerning the particular circumstances here, the Court is unpersuaded by Petitioner's conclusory argument. *See id.*

In any event, even assuming arguendo that Petitioner did not know of the factual predicates until May 2019, his line of reasoning faces another hurdle. Plaintiff has failed to demonstrate that he could not have previously "discovered the factual predicate of [his] habeas claim[s] through the exercise of due diligence." *Ayers*, 113 F.4th at 670. While a petitioner need not demonstrate "maximum feasible diligence" given the "reality of the prison system," it still remains the petitioner's burden to show due diligence. *Id.* at 672 (quotation omitted); *DiCenzi v. Rose*, 452 F.3d 465, 470-71 (6th Cir. 2006) (quotation omitted).

Petitioner rests significantly—if not entirely—upon the Ohio appellate court's decision that permitted him to move for a new trial based on new evidence under Ohio Rule of Criminal Procedure 33. (Objections, Doc. 45, Pg. ID 3256; Reply, Doc. 25, Pg. ID 2915.) The Magistrate Judge and Respondent both concluded that Petitioner improperly conflates a question of state law with the pertinent question of federal law. (Report, Doc. 43, Pg. ID 3229-31; Response, Doc. 46, Pg. ID 3270; Supp. Report, Doc. 54, Pg. ID 3301-04.) The Court agrees. Simply put, the state court addressed the question of moving for a new

trial under Ohio law: whether Petitioner "had, *within 120 days of the return of the verdict*, been unavoidably prevented from discovering, and from presenting in a new-trial motion, the *evidence* upon which his proposed new-trial motion depended." *State v. Long*, 2021-Ohio-2835, 2021 WL 3661399, at *1 (Ohio Ct. App. Aug. 18, 2021) (emphasis added)). However, "diligence" for federal habeas purposes is distinct from the Ohio courts' "unavoidably prevented" analysis under state law. *See Cunningham v. Shoop*, 23 F.4th 636, 658 (6th Cir. 2022); *Mock*, 2024 WL 2347279, at *12 n.14.

Despite Respondent and the Magistrate Judge both highlighting this difference, Petitioner does not provide sufficient facts or arguments to bridge the gap. For instance, there appears to have been a delay of at least two years between the Supreme Court of Ohio's holding that defendants can seek records and Petitioner receiving his case file. (Report, Doc. 43, Pg. ID 3230); *State ex rel. Caster v. Columbus*, 89 N.E.3d 598, 609 (Ohio 2016). Petitioner offers no timeline or argument as to why, objectively speaking, a person acting with due diligence would not have pursued such claims sooner. *See Rucker v. Genovese*, 834 F. App'x 126, 128 (6th Cir. 2020) (explaining that the petitioner "did not describe his attempts to secure the prosecution's case file in the nearly five years that the documents were a publicly available record before the date that he claimed that he received them"); *Mock*, 2024 WL 2347279, at *14 (finding that the petitioner failed to show diligence as to the *Brady* claim given the unexplained gap of time).

"Unsupported and conclusory arguments," without more, "are insufficient to warrant application of § 2244(d)(1)(D)." *Thomas v. Macauley*, No. 1:24-CV-1351, 2025 WL 414250, at *6 (W.D. Mich. Feb. 6, 2025); *see also Page v. Artis*, No. 2:22-CV-10965, 2023 WL

1802376, at *4 (E.D. Mich. Feb. 6, 2023); *Grayson v. Grayson*, 185 F. Supp. 2d 747, 750-51 (E.D. Mich. 2002); *Carter v. Klee*, 286 F. Supp. 3d 846, 852 (E.D. Mich. 2018); *Redmond v. Jackson*, 295 F. Supp. 2d 767, 772 (E.D. Mich. 2003); *Casey v. Forshey*, No. 2:25-CV-505, 2026 WL 923326, at *5 (S.D. Ohio Apr. 6, 2026); *Herring v. Hill*, No. 1:21-CV-1496, 2023 WL 5756161, at *7 (N.D. Ohio Aug. 18, 2023), *report and recommendation adopted*, No. 1:21-CV-1496, 2023 WL 5748714 (N.D. Ohio Sept. 6, 2023); *Mason v. Booker*, No. 3:19-CV-864, 2020 WL 3802713, at *4 (E.D. Va. July 7, 2020); *Cruz*, 2017 WL 4180016, at *4.

Certainly, the statute of limitations will sometimes "not begin to run on a *Brady* claim until the suppressed evidence is disclosed by the government." *Jefferson*, 730 F.3d at 547. Here, beyond relying upon the decision of an Ohio court addressing a distinct question of state law, Petitioner does not offer reasoning as to why the circumstances of this particular case justify a finding of timeliness. (Objections, Doc. 45, Pg. ID 3256.) Consider the Sixth Circuit case of *Willis v. Jones*, 329 F. App'x 7 (6th Cir. 2009). There, the Sixth Circuit explained that "a state could conceivably violate *Brady* in a way that would be easily discoverable by a duly diligent petitioner" but that "in the circumstances of this case, Willis has shown due diligence because *he had no reason to know* that the state had not disclosed *Brady* evidence." *Willis*, 329 F. App'x at 16-17 (emphasis added). The Sixth Circuit has elsewhere recognized the "distinction between suspicions of misconduct and having sufficient facts to sustain a § 225[4] motion." *Jefferson*, 730 F.3d at 547. However, Petitioner fails to demonstrate why he could not have further investigated or brought his claims sooner.

## CONCLUSION

For all these reasons, the Court **ORDERS** the following:

1) Petitioner's Objections (Doc. 45) are **OVERRULED**;
2) The Magistrate Judge's Supplemental Report and Recommendation (Doc. 54) is **ADOPTED**;
3) The Magistrate Judge's Report and Recommendation (Doc. 43) is **ADOPTED** as to the statute of limitations analysis;
4) Petitioner's Amended Petition is hereby **DISMISSED WITH PREJUDICE**;
5) For the reasons discussed above, Petitioner has not shown that reasonable jurists would debate the untimeliness of his claims and does not object to the Magistrate Judge's recommendation concerning a certificate of appealability. The Court therefore **CERTIFIES** pursuant to 28 U.S.C. § 1915(a) that any appeal of this Order would not be taken in good faith and hereby **DENIES** Petitioner leave to appeal in forma pauperis; and
6) This matter is **TERMINATED** from the Court's docket.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: ______________________________
JUDGE MATTHEW W. McFARLAND